**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL ASHBEY,
                    *Plaintiff-Appellee*,

v.

ARCHSTONE PROPERTY
MANAGEMENT, INC., a corporation,
                    *Defendant-Appellant*.

No. 12-55912

D.C. No.
8:12-cv-00009-
DOC-RNB

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
March 4, 2014—Pasadena, California

Filed May 12, 2015

Before: Jay S. Bybee, Carlos T. Bea,
and Morgan Christen, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Arbitration

The panel held that employee Michael Ashbey knowingly waived his right to a judicial forum for his Title VII claim and equivalent state-law claims, reversed the district court's order denying Archstone Property Management, Inc.'s motion to compel arbitration, and remanded for entry of an order granting Archstone's motion.

The scope of the Federal Arbitration Act is narrowed by federal statutes, such as Title VII of the Civil Rights Act of 1964, which limits "the enforcement of arbitration agreements with regard to claims arising under" the statute. *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998).

The panel held that the case was distinguishable from *Kummetz* and *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756 (9th Cir. 1997), because Archstone presented its employee the "express" choice lacking in *Kummetz* and *Nelson* where the employee signed an acknowledgment that explicitly notified him that Archstone's Company Policy Manual contained a Dispute Resolution Policy section explaining Archstone's arbitration policy, and the employee expressly agreed to adhere to the policy. The panel concluded that the arbitration provision was enforceable.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Henry D. Lederman (argued), Littler Mendelson, P.C., Walnut Creek, California; Connie L. Michaels and Sarah E. Ross, Littler Mendelson, P.C., Los Angeles, California, for Defendant-Appellant.

Avi Burkwitz (argued) and Diana Ratcliff, Peterson Bradford Burkwitz, Burbank, California, for Plaintiff-Appellee.

Susan R. Oxford (argued), Attorney, P. David Lopez, General Counsel, Carolyn L. Wheeler, Acting Associate General Counsel, and Lorraine C. Davis, Assistant General Counsel, United States Equal Employment Opportunity Commission, Washington, D.C.,  for Amicus Curiae Equal Employment Opportunity Commission.

---

**OPINION**

BEA, Circuit Judge:

Defendant Archstone Communities LLC ("Archstone") appeals from the district court's denial of its Motion to Compel Arbitration.  We reverse the district court's order and remand for entry of an order granting Archstone's Motion to Compel Arbitration.

I.

Michael Ashbey was employed at Archstone from December 1996 until November 2010, when he was fired.  He began as a Service Technician and was promoted to Regional Service Manager in 2003.

In 2009, Ashbey signed a document entitled "Acknowledgment of Receipt of Archstone Company Policy Manual 2009" ("Acknowledgment"). The Acknowledgment contained the following language:

> I acknowledge that I have received directions as to how I may access the Archstone Company Policy Manual, including the Dispute Resolution Policy. I understand that Archstone can administer, interpret, discontinue, supplement, amend or withdraw any of the employment and personnel policies and procedures set forth in this Company Policy Manual. I understand that it is my responsibility to understand the Archstone Company Policy Manual, including the Dispute Resolution Policy, and to adhere to all of the policies contained herein.
>
> . . .
>
> I also understand that this Company Policy Manual does not alter the employment-at-will relationship discussed in the Archstone Company Policy Manual or create any contractual rights. I understand that, as an employee-at-will, either Archstone or I may terminate the employment relationship at any time, with or without notice or cause. I understand that if at any time I have any questions regarding this Company Policy Manual I can discuss them with my supervisor, office manager, the Legal Department or a Human Resources

representative. During my employment, I agree to abide by the provisions in this Company Policy Manual.

As the Acknowledgment twice mentioned, the Company Policy Manual for 2009 ("Manual") (as well as the Manual for 2010)[1] contained a detailed Dispute Resolution Policy section explaining Archstone's arbitration policy. The Dispute Resolution Policy stated in relevant part:

This Policy is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. . . . Except as it otherwise provides, this Policy is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law, and therefore this Policy requires all such disputes between Employee and the Company to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial. . . . This Policy also applies, without limitation, to disputes arising out of the employment relationship or the termination thereof including, without limitation, disputes over . . . harassment and claims arising under the . . . Civil Rights Act of 1964 . . . and all other state statutory and common law claims.

---

[1] In March 2010, Ashbey signed a document entitled "Acknowledgment of Receipt of Archstone Company Policy Manual 2010." The 2010 Acknowledgment is identical to the 2009 Acknowledgment in all material respects.

In November 2011, Ashbey filed a complaint in California state court alleging, among other claims, unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and equivalent state-law claims. In his complaint, Ashbey alleged that in 2006, Archstone employee Alex Winborn began harassing Ashbey's wife, who also worked for Archstone. In June 2010, shortly after Ashbey's wife complained of Winborn's unlawful conduct, Archstone terminated her employment. Ashbey further alleged that, following the termination of Mrs. Ashbey's employment, Archstone engaged in retaliatory conduct towards him by first altering his employment conditions and then by wrongfully terminating his employment. Ashbey demanded a jury trial.

Archstone removed the case to federal district court on the grounds of both diversity of citizenship and federal question (Title VII) jurisdiction. Archstone then filed a Motion to Compel Arbitration pursuant to the Manual's Dispute Resolution Policy. The district court denied Archstone's motion as to all of Ashbey's claims. We address here the district court's refusal to compel arbitration of Ashbey's Title VII claim and its state-law equivalents on the ground that Ashbey did not knowingly waive his Title VII right to a jury trial. We address the district court's refusal to compel arbitration on Ashbey's other claims in an accompanying memorandum disposition.

II.

We review *de novo* a district court's denial of a motion to compel arbitration. *Bushley v. Credit Suisse First Boston*, 360 F.3d 1149, 1152 (9th Cir. 2004).

### A.

The Federal Arbitration Act ("FAA") provides:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). In the accompanying memorandum disposition we hold that these two elements are satisfied with regard to all of Ashbey's claims. But our task does not end there. The scope of the FAA is narrowed by other federal statutes, such as Title VII and the Americans with Disabilities Act ("ADA"), which "limit the enforcement of arbitration agreements with regard to claims arising under th[ose] statute[s]." *Kummetz v. Tech Mold, Inc.*, 152 F.3d 1153, 1155 (9th Cir. 1998).

Before 1991, "Title VII had been interpreted to prohibit any waiver of its statutory remedies in favor of arbitration." *Prudential Ins. Co. of Am. v. Lai*, 42 F.3d 1299, 1304 (9th Cir. 1994). But Congress reversed course with amendments to Title VII in the Civil Rights Act of 1991. *Id.* Section 118 of the Act states: "Where appropriate and to the extent authorized by law, the use of alternative means of dispute resolutions, including settlement negotiations, conciliation,

facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes arising under the Acts or provisions of Federal law amended by this title." *See* Pub. L. No. 102–166, § 118, 105 Stat. 1071 (codified at Notes to 42 U.S.C. § 1981); *see also Lai*, 42 F.3d at 1304. We have recognized that Section 118 was a "polite bow to the popularity of alternative dispute resolution." *EEOC. v. Luce, Forward, Hamilton & Scripps*, 345 F.3d 742, 747 (9th Cir. 2003) (en banc) (quoting *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 363 (7th Cir. 1997)). Nonetheless, we did not read Section 118 in *Lai* as an unfettered endorsement of alternative dispute resolutions for Title VII claims; such resolutions are permissible only "where appropriate." *Lai*, 42 F.3d at 1305. We concluded, based on a Senator's floor statement, that the phrase "where appropriate" signals a plaintiff cannot waive his right to a judicial forum for Title VII claims unless he does so "knowingly." *Id.* ("[W]e conclude that a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has knowingly agreed to submit such disputes to arbitration."). As a result, not only must there be a valid agreement to arbitrate that encompasses the right at issue, that agreement must also be "knowing." *Id.*[2]

The district court here held the arbitration agreement was unenforceable with respect to Ashbey's Title VII and related state-law claims because the Acknowledgment's language did not give Ashbey adequate notice for Ashbey "knowingly" to have waived his right to a jury trial for those claims.

---

[2] This "knowing" standard applies to Title VII's state-law equivalents also. *See Lai*, 42 F.3d at 1304 n.1.

## B.

Our opinions in *Nelson* and *Kummetz* are instructive on this issue. *See Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 760 (9th Cir. 1997); *Kummetz*, 152 F.3d at 1155. In *Nelson*, the employer required Nelson to sign an acknowledgment similar to the one in this case:

> I have received a copy of the Cyprus Bagdad Copper Corporation Handbook that is effective July 1, 1993 and understand that the Handbook is a guideline to the Company's policies and procedures. I agree to read it and understand its contents. If I have any questions regarding its contents I will contact my supervisor or Human Resources Representative.

*See Nelson*, 119 F.3d at 758. The handbook contained an arbitration agreement. *Id.* at 758–59. Some time after Nelson signed the acknowledgment, the employer reorganized its operations and required Nelson to begin working 12-hour shifts. *Id.* at 758. Nelson had difficulty with the new shifts due to medical limitations and, after attempting to accommodate Nelson, the employer fired him. *Id.* Nelson filed a lawsuit in federal district court alleging the employer violated the ADA. *Id.* at 759. The district court granted summary judgment for the employer because it found the arbitration clause in the handbook was enforceable and that Nelson had knowingly agreed to waive his right to a judicial forum. *Id.*

We reversed. We held the acknowledgment form did not notify "Nelson either that the Handbook contained an

arbitration clause or that his acceptance of the Handbook constituted a waiver of his right to a judicial forum in which to resolve claims covered by the ADA." *Id.* at 761. The fact that Nelson continued to work for his employer did not cure the notice failure: "Nelson's continued employment after he received the Handbook, and after he read it (and we assume he did), did not amount to the type of 'knowing agreement'" required by our precedent. *Id.* at 762. We explained that "[n]othing in either the acknowledgment form or the Handbook itself put Nelson on notice that by not quitting his job he was somehow entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute." *Id.* We held, "[a]ny bargain to waive the right to a judicial forum for civil rights claims . . . in exchange for employment or continued employment must at the least be express: the choice must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." *Id.* The acknowledgment and Handbook in *Nelson* failed that test.

*Kummetz* was similar to *Nelson*. There, the employer gave Kummetz an Employment Information Booklet and an Information Booklet Acknowledgment. *Kummetz*, 152 F.3d at 1154. The Information Booklet Acknowledgment stated in relevant part:

> I understand and agree that I am covered by and must abide by the contents of this Booklet. I also understand and agree that this Booklet in no way constitutes an employment contract and that I remain an at-will employee.

> . . .

> I understand that the policies, practices and benefits set forth in this Booklet are subject to change at any time and without prior notice at the sole and unlimited discretion of the Company. The Company also reserves the right to interpret any ambiguity or any confusion about the meaning of any term in this Booklet, and that interpretation shall be final and binding.

*Id.* The Employment Information Booklet contained an arbitration clause. *Id.* Four months later, the employer attempted to transfer Kummetz to a lower-paying position, and Kummetz quit. *Id.* Kummetz sued the employer in federal district court for violating the ADA, alleging the employer transferred him because he had previously undergone a kidney transplant. *Id.* The district court granted summary judgment to the employer because it concluded that Kummetz had waived his right to a judicial forum. *Id.* We reversed on appeal. We held that the acknowledgment did not constitute valid notice of a jury trial waiver because it "did not notify Kummetz that the Booklet contained an arbitration provision, nor did it mention or imply anything about employment-related disputes, civil rights statutes, or waivers of remedies." *Id.* at 1155.

This case is distinguishable from *Kummetz* and *Nelson.* The Acknowledgment that Ashbey signed stated:

> I acknowledge that I have received directions as to how I may access the Archstone Company Policy Manual, including the *Dispute Resolution Policy*. I understand that Archstone can administer, interpret,

> discontinue, supplement, amend or withdraw any of the employment and personnel policies and procedures set forth in this Company Policy Manual. I understand that it is my responsibility to understand the Archstone Company Policy Manual, including the *Dispute Resolution Policy*, and *to adhere to all of the policies contained herein*.

> . . .

> During my employment, *I agree to abide by the provisions in this Company Policy Manual*.

In contrast to the acknowledgments in *Kummetz* and *Nelson*, the Acknowledgment here explicitly notified Ashbey the Manual contained a Dispute Resolution Policy, and it did so in two places. And Ashbey expressly agreed "to adhere" to the Manual and the Dispute Resolution Policy. That the Acknowledgment did not list the terms of the Policy is not fatal to the Policy's enforcement. The full text of the Policy was at Ashbey's fingertips; he acknowledged he had received directions on how to access both the Manual and the Dispute Resolution Policy contained in the Manual. Anyone who reviewed the Dispute Resolution Policy would immediately realize he was "entering into an agreement to waive a specific statutory remedy afforded him by a civil rights statute." *Nelson*, 119 F.3d at 762. The Dispute Resolution Policy was not ambiguous on that point: (1) the policy stated it "is governed by the Federal Arbitration Act"; (2) the policy stated that "all . . . disputes between Employee and the Company [are] to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury

trial"; and (3) the policy stated it "applies, without limitation, to disputes arising out of the employment relationship . . . including, without limitation, disputes over . . . harassment and claims arising under the . . . Civil Rights Act of 1964." In short, Archstone presented Ashbey the "express" choice lacking in both *Kummetz* and *Nelson*. We hold that Ashbey knowingly waived his right to a judicial forum for his Title VII claim and equivalent state-law claims.

### III.

The district court erred in denying Archstone's Motion to Compel Arbitration. The district court's order denying Archstone's Motion to Compel Arbitration is **REVERSED** and **REMANDED** for entry of an order granting Archstone's Motion to Compel Arbitration.