Todd SINK, Plaintiff–Appellee,

v.

ADEN ENTERPRISES, INC., a corporation; and Michael Luther, Defendants–Appellants.

No. 02–35323.

United States Court of Appeals, Ninth Circuit.

Submitted Sept. 12, 2003.*

Filed Dec. 10, 2003.

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

John B. Morrow, Erickson & Sederstrom, P.C., Omaha, NE, for the defendants-appellants.

Stephen L. Brischetto, Portland, OR, for the plaintiff-appellee.

Before ALDISERT,** GRABER, and GOULD, Circuit Judges.

GOULD, Circuit Judge:

We consider whether the Federal Arbitration Act requires a district court to stay an action and order arbitration when the party seeking to compel arbitration has previously defaulted in proceeding with arbitration.

## I

On May 25, 2000, appellee Todd Sink ("Sink") sued appellants Aden Enterprises and Michael Luther (collectively, "Aden") in the United States District Court for the District of Oregon, alleging that Aden breached Sink's employment agreement by not providing payments and stock options due Sink. Because of an arbitration clause in Sink's employment agreement, the district court on March 19, 2001, stayed Sink's action and referred the matter to arbitration. The parties entered into a written contract to arbitrate with United States Arbitration & Mediation of Oregon ("USA & M") and scheduled arbitration for August 20–21, 2001.

Sink, Aden, and USA & M agreed that the estimated costs of the arbitration were to be pre-paid to USA & M by August 6, 2001, and the parties do not dispute that Aden, the employer, was obligated to pay these costs.[1] This agreement on the timing of and responsibility for payment of arbitration costs was confirmed by USA & M in a letter mailed to the parties on June 14, 2001. A second letter from USA & M

---

** The Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

1. The employment agreement between Sink and Aden required Aden as employer to pay the costs of any arbitration arising from the employment relationship. In pre-arbitration proceedings before USA & M, Aden initially argued that Sink's claim arose in part out of a business transaction between Sink and Aden, and not entirely out of the employer-employee relationship. An arbitrator rejected this claim and decided that Aden was bound to pay all costs of the arbitration. Aden did not appeal or contest that obligation in the district court's proceedings in this case.

to the parties, dated June 28, 2001, reconfirmed the arbitration cost payment agreement.

Nonetheless, Aden did not pay these costs or inform Sink and USA & M of Aden's inability to pay before the August 6, 2001 payment deadline. On August 7, 2001, Sink's counsel wrote to USA & M, indicating that Sink would seek a default award if Aden did not pay the required fees by August 20, 2001, the date on which the arbitration had been scheduled to commence. On August 17, 2001, USA & M informed the parties that it was cancelling the scheduled arbitration due to non-payment of fees. On August 21, 2001, Sink submitted a Motion for an Order of Default to the arbitrator, which the arbitrator granted on August 23, 2001.

Sink next filed three motions in the district court: to lift the stay of proceedings in Sink's action, for judgment to be entered against Aden by default and, alternatively, for Aden to show cause why a default judgment should not be entered. Aden opposed Sink's motion for judgment by default, but filed no opposition to the motions to lift the stay of proceedings and to show cause. On October 24, 2001, the district court granted the motion to lift the stay and scheduled a hearing on Sink's remaining motions to be held on December 7, 2001. At the December 7, 2001 hearing, Aden's counsel informed the district court that Aden had obtained the money needed to pay the costs of arbitration and made an oral motion again to refer the matter to arbitration. After briefing, on February 26, 2002, the district court denied Sink's remaining motions for default judgment and to show cause. The district court also found Aden to be in default in proceeding with arbitration and found that Aden had waived its right to arbitrate, and therefore denied Aden's motion that the parties be ordered to return to arbitration. The district court ordered that the case proceed to trial. Aden appeals the order denying return of the case again to arbitration. We have jurisdiction under 9 U.S.C. § 16(a)(3) and affirm.

## II

### A

■ Aden first maintains that it was error for the district court to find that Aden defaulted in arbitration. We consider the question of whether Aden defaulted in arbitration to be one of fact, as acknowledged by the parties, and we review the factual findings of a district court for clear error. *Woods v. Saturn Distribution Corp.*, 78 F.3d 424, 427 (9th Cir.1996).

Under the arbitration contract between Sink, Aden, and USA & M, Aden was required to pay the costs of arbitration by August 6, 2001. Aden received multiple notices that the costs were due by this date and that Aden was responsible for payment. Aden did not pay these costs by August 6, 2001 and gave no prior notice that it would be unable to pay. Further, Aden did not present any evidence that at the time payment was due in the arbitration, Aden made genuine efforts to make alternate payment arrangements. Sink did not move for an order of default from the arbitrator until August 21, 2001, two weeks after the August 6, 2001 payment deadline. At this time, Aden still had made no arrangement for payment of the costs of arbitration. Citing Aden's nonpayment, the arbitrator on August 23, 2001, entered an Order finding Aden to be in default in the arbitration proceeding. It was not clearly erroneous for the district court to find, in confirmation, that Aden had defaulted in arbitration.[2] We affirm

---

**2.** *See* BLACK'S LAW DICTIONARY 428 (7th ed.1999) (defining "default" to mean "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due").

the district court's conclusion that Aden defaulted in the arbitration.

**B**

 Aden further argues that even if it did default, the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, compels that the district court order the parties to return to arbitration. We review *de novo* as an issue of law whether after a default in arbitration the FAA still compels a court to order the parties in an action to return to arbitration. *Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931, 936 (9th Cir.2001), *cert. denied* 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002).

Aden's contention presents us with a question not previously addressed in our decisions interpreting the FAA. On the one hand, as Aden argues, the United States Supreme Court has declared that the FAA represents Congress's intent "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 22, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and that " 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration'." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (quoting *Moses H. Cone,* 460 U.S. at 24–25, 103 S.Ct. 927).

 On the other hand, our review of the FAA shows that it cannot sensibly be interpreted to require an order compelling arbitration here pursuant to 9 U.S.C. § 4. The language of a statute must be interpreted in its context to effectuate legislative intent. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) ("Statutory construction . . . is a holistic endeavor."); *McGann v. Ernst & Young,* 102 F.3d 390, 394 (9th Cir.1996)

(quoting same). Aden's attempt to compel arbitration for a second time stumbles over § 3 of the FAA, which provides that before granting a stay of proceedings pending arbitration a court must determine that "the issue involved" is "referable to arbitration under such an agreement" and that "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Because the district court did not err in finding Aden to be in default of arbitration, § 3 precludes any attempt by Aden again to stay district court proceedings pending a further reference to arbitration. *Id.*

This conclusion does not end our inquiry, as Aden maintains that regardless of the language of § 3 of the FAA, § 4 leaves a district court with no choice but to order a return to arbitration. *See* 9 U.S.C. § 4; *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 217, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). In support of this argument, Aden points to the language of § 4 which, in contrast to § 3, contains no express condition that a party seeking to compel arbitration not be in default in proceeding with arbitration. 9 U.S.C. § 4.

We conclude that Aden's contention is inconsistent with the structure and purpose of the FAA. *See K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (stating that a court performing statutory interpretation may look to "the language and design of the statute as a whole"); *United States v. Lewis,* 67 F.3d 225, 228–29 (9th Cir. 1995) ("Particular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme."). In our view, it cannot sensibly be maintained that a district court is required to enter an order under § 4 compelling parties to return to arbitration under circumstances where § 3 precludes the district court from staying its own proceeding.

Such an interpretation of § 4 would interfere with the manifest intent of Congress, as expressed in § 3, that arbitration is to be furthered where a party has not defaulted in arbitration, and would lead to duplicative and potentially inconsistent decisions if an arbitral forum and a court action were to proceed at the same time on the same claim.

■ The United States Supreme Court has recognized that §§ 3 and 4 of the FAA provide "parallel devices for enforcing an arbitration agreement." *Moses H. Cone,* 460 U.S. at 22, 103 S.Ct. 927. A party desiring arbitration of a dispute first brought in a district court can seek a stay of the court proceedings under § 3, and a concurrent order under § 4 compelling arbitration. *See, e.g., Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104, 1106 (9th Cir.2002). The interdependent nature of these two sections would be undermined if a party unable to stay litigation under § 3 because of a prior default in proceeding with arbitration could nonetheless compel a return to arbitration under § 4. If a party defaults after an initial stay and reference to arbitration, that permits a district court to vacate the § 3 stay. *See Morris v. Morgan Stanley & Co.,* 942 F.2d 648, 653–54 (9th Cir.1991) (vacating stay where party originally seeking stay defaulted in arbitration by delay and non-prosecution of claims); *Miller v. Aaacon Auto Transp., Inc.,* 545 F.2d 1019, 1020 (5th Cir.1977) (per curiam) (same). The structure of the FAA leads us to conclude that the district court in such a case is not compelled again to order arbitration upon a new § 4 motion brought by the defaulting party.

■ Accepting Aden's reading of the FAA would also allow a party refusing to cooperate with arbitration to indefinitely postpone litigation. Under Aden's interpretation, the sole remedy available to a party prejudiced by default would be a court order compelling a return to arbitration. The same offending party could then default a second time, and the prejudiced party's sole remedy, again, would be another order compelling arbitration. This cycle could continue, resulting in frustration of the aggrieved party's attempts to resolve its claims. One purpose of the FAA's liberal approach to arbitration is the efficient and expeditious resolution of claims. H.R. Rep. No. 96, 68th Cong., 1st Sess., 2 (1924); *see Dean Witter,* 470 U.S. at 219–20, 105 S.Ct. 1238. This purpose is not served by requiring a district court to enter an order returning parties to arbitration upon the motion of a party that is already in default of arbitration. Another, and preeminent, purpose of the FAA is to ensure "judicial enforcement of privately made agreements to arbitrate." *Dean Witter,* 470 U.S. at 219, 105 S.Ct. 1238. But this purpose also is not served by returning parties to arbitration upon the motion of a party that is in default of arbitration. Aden's failure to pay required costs of arbitration was a material breach of its obligations in connection with the arbitration. Aden had a fair chance to proceed with arbitration, but Aden scuttled that prospect by its non-payment of costs, impeding the arbitration to the point where the arbitrator cancelled the arbitration and declared Aden in default. In these circumstances, we hold that § 4 of the FAA does not compel a district court to return the parties once more to arbitration.

### III

■ We hold that a party to an arbitration agreement may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3. The district court did not err in finding Aden to be in default of arbitration. Be-

cause Aden is in default, and the FAA no longer permits a stay of the court proceedings in favor of arbitration, the FAA commensurately does not require the district court to order the parties to return to arbitration.[3]

**AFFIRMED.**

**3.** Aden also claims that the district court erred in determining that Aden waived its contractual right to arbitrate. Because we affirm the district court in light of our interpretation of the FAA, we need not decide the issue of waiver. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir.1989).