**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2100-24

PARADIGM HEDGE, LLC, and
PARADIGM DEVIATION, LLC,

      Plaintiffs-Appellants,

v.

MARY ANN FOLCHETTI,
Individually and as EXECUTRIX
OF THE ESTATE OF MARIE
CERLIONE, MICHAEL
FOLCHETTI, ASHLEY L.
FOLCHETTI, and JAMES
FOLCHETTI,

      Defendants-Respondents.

_____

Argued December 17, 2025 – Decided March 16, 2026

Before Judges Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2934-18.

Michael Confusione argued the cause for appellants (Hegge & Confusione, LLC, attorneys; Michael Confusione, on the briefs).

Louis E. Granata (Louis E. Granata, PC) argued the cause for respondents.

PER CURIAM

Plaintiffs appeal from a Law Division order requiring them to pay attorney's fees and costs to defendants following the dismissal of their matter and the entry of judgment in defendants' favor. While we agree with the trial court's finding that plaintiffs defaulted on their contractual payment obligation to defendants, we disagree with the amount of fees awarded. Accordingly, we affirm the trial court's decision to award attorney's fees but remand the matter to the trial court to modify the fees to reflect only that work attributable to defendants' efforts to obtain their judgment.

I.

In February 2014, plaintiffs agreed to sell and defendants agreed to purchase (the agreement) an eleven-acre property in Holmdel conditioned on at least six acres of that property being clear of protected wetlands and subject to plaintiffs' responsibility to pay for certain environmental remediation.

Separately, the parties executed a $500,000 mortgage note on March 21, 2016 ("Note"). The Note included this language under a subsection titled "Default":

2

> If [plaintiffs] fail [] to make any payment required by this Note within (30) thirty days after the due date, [defendants] may declare [plaintiffs] in [d]efault on the [m]ortgage and this Note. Upon [de]fault, [plaintiffs] must immediately pay the full amount of all unpaid principal and any other amounts due on the [m]ortgage and this Note, [defendants'] costs of collection and reasonable attorney['s] fees.

On April 17, 2017, the parties modified the Note to reduce the principal from $500,000 to $200,000 and to change the accrued interest on the obligation. The parties also specifically agreed to add the following language: "remaining Principal of $200,000.00 less the costs and expenses of the Remediation Work at the Property . . . plus accrued interest, shall be remitted to [defendants] within thirty . . . days of the completion of the Remediation Work at the Property, or March 21, 2018, whichever is sooner." The amendment confirmed the "provisions of the [original] Note remain unchanged and continue in full force and effect."

On July 25, 2018, defendants' counsel advised plaintiffs in a "Notice of Default" that the remediation work that plaintiffs agreed to perform had not been completed and the deadline for the payment under the amendment to the Note passed. Defendants acknowledged plaintiffs sought further amendments to the Note, but those efforts were rejected. According to that letter, if plaintiffs failed to pay the $200,000 within thirty days of the Notice of

Default, defendants' counsel would "enforce [his] client's rights under the Note and Mortgage and seek attorney['s] fees and costs." Plaintiffs responded with a lawsuit alleging breach of contract, fraud, and other claims. Defendants counterclaimed for the outstanding balance on the Note and to foreclose on the property.

After a bench trial, the Law Division denied plaintiffs' claims, granted defendants' counterclaim, and awarded a $200,000 judgment to defendants with interest. Without explanation, the trial court also denied both parties' requests for counsel fees and costs.

Plaintiffs appealed. We affirmed the judgment but remanded to the trial court to issue a statement of reasons limited to the issue of the entitlement to the award of attorney's fees. Paradigm Hedge v. Cerlione, No. A-1161-21 (App. Div. May 11, 2023) (slip op. at 21).

On remand, the trial court initially observed that "[p]ursuant to the terms of the Mortgage in the event of a default . . . plaintiffs must immediately pay the full amount of the unpaid principal, interest, and other amounts due on the Note and this Mortgage and the cost of collection and reasonable attorney['s] fees." It also noted "[Rule] 4:42-9(a)(4) . . . provides for an award of attorneys' fees and an action for the foreclosure on the Mortgage." Following

4

these principles, the trial court considered the certifications provided by counsel, made a few deductions, and ultimately awarded defendants $71,246.97.

Plaintiffs appeal and argue the trial court mistakenly awarded attorney's fees and costs to defendants. They assert defendants are not legally entitled to recover these fees because plaintiffs initiated the lawsuit rather than defendants. Additionally, they contend this litigation is not a collection action resulting from a default under the Note and Mortgage. Finally, plaintiffs emphasize defendants' right to recover fees and costs under the Note and Mortgage would only be triggered if there were a declared default under the Note- a conclusion plaintiffs argue the trial court did not make.

## II.

Plaintiffs first argue the attorney's fee award was improper because the trial court never concluded plaintiffs defaulted under the terms of the Note and, therefore, never triggered the obligation to pay these amounts. We disagree.

We review de novo a trial court's interpretation of a contract. Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998). "The determination of whether a contract term is clear or ambiguous is

a pure question of law requiring plenary review." In re Teamsters Indus. Emp. Welfare Fund, 989 F.2d 132, 135 (3d Cir. 1993). "The plain language of the contract is the cornerstone of the interpretive inquiry; 'when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.'" Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)). "[U]nambiguous contracts will be enforced as written unless they are illegal or otherwise violate public policy." Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Leonard & Butler P.C. v. Harris, 279 N.J. Super. 659, 671 (App. Div. 1995)). The "court's task [i]s 'not to rewrite a contract for the parties better than or different from the one they wrote for themselves.'" Globe Motor Co. v. Igdalev, 225 N.J. 469, 483 (2016) (quoting Kieffer v. Best Buy, 205 N.J. 213, 223 (2009)). "It is well-settled that '[c]ourts enforce contracts based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract.'" In re Cnty. of Atlantic, 230 N.J. 237, 254 (2017) (alteration in original) (quoting Manahawkin Convalescent, 217 N.J. at 99) (internal quotation marks omitted). "A party violates the terms of a contract by failing to fulfill a requirement

A-2100-24

enumerated in the agreement." Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 512 (2019).

Central to resolving this dispute is the determination of whether plaintiffs defaulted on their payment obligations under the contract established between plaintiffs and defendants through the Mortgage Note. We conclude plaintiffs did, in fact, default.

Default is "the omission or failure to perform a legal or contractual duty; [especially], the failure to pay a debt when due." Roach v. BM Motoring, LLC, 228 N.J. 163, 176 n.4 (2017) (citing Sink v. Aden Enters., Inc., 352 F. 3d 1197, 1199 n.2. (9th Cir. 2003)) (quoting Default, Black's Law Dictionary (7th ed. 1999)).

In this matter, the term is defined by the language of subsection titled "Default": "If [plaintiffs] fail [] to make any payment required by this Note within (30) thirty days after the due date, the [l]ender may declare [b]orrower in default on the Mortgage and this Note."

Despite the trial court's failure to explicitly use the term "default" in its decision, the record reveals plaintiffs defaulted. Sufficient evidence was presented to establish that plaintiffs did not fulfill their payment obligation under the terms of the Note because they failed to make any payment due as

7

required by the agreement. Specifically, under the terms of the amended Note, plaintiffs were obligated to pay $200,000 to defendants within thirty days of the "completion of the Remediation Work or March 21, 2018, whichever is sooner." Plaintiffs failed to comply with both aspects.

Defendants also notified plaintiffs of their non-compliance in a "Notice of Default," and provided plaintiffs thirty days to remedy their payment deficiency. When plaintiffs failed to do so, defendants deemed them "in default under the Mortgage and Note." Consequently, under the terms of the obligation, plaintiffs were immediately required to pay the full amount of all unpaid principal, any other amounts due on the Mortgage and Note, as well as defendants' costs of collection and attorney's fees.

### III.

Since plaintiffs defaulted in their obligation under the Note, defendants were, therefore, entitled to recover their "costs of collection and reasonable attorney fees." The trial judge agreed and, after making certain deductions from the certifications in support of that request, awarded defendants $71,246.97, or $62,090.05 for legal fees and $9,156.92 in costs.

New Jersey courts have consistently enforced contractual provisions requiring the payment of attorneys' fees and costs. See State Dep't of Envtl.

8

Protection v. Ventron Corp., 94 N.J. 473, 504 (1983) (holding that attorneys' fees provisions are enforceable where expressly authorized by contract, statute, or court rule) (citations omitted) On appeal, plaintiffs argue that the amount is excessive since the award includes attorney's fees charged for matters unrelated to work defendants did to obtain their judgment. We agree because any charges unrelated to defendants' counsel's litigation efforts render the fee unfair and unreasonable.

Preliminarily, we note that we will only disturb a trial court's award of attorney's fees "'only on the rarest of occasions, and then only because of a clear [misapplication] of discretion.'" Packard-Bamburg & Co., Inc. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Here, we acknowledge that although the trial court ostensibly reviewed the certifications and made certain conclusory deductions, the record is devoid of the required analysis reflecting the judicial scrutiny of the reasonableness of the fees related to the transactions for which defendants' counsel sought recovery.

According to the Note, upon plaintiffs' default, the unpaid principal is accelerated and they are required to pay "costs of collection and reasonable attorney fees." Because costs of collection and attorney's fees appear together

in the same sentence, it is reasonable to conclude that any recoverable attorney's fees are limited to those incurred specifically during the collection process, rather than reimbursement for all fees paid by the prevailing party throughout the entire representation. Our jurisprudence mandates the trial court to scrutinize and to adjust, if necessary, the requested fees to reflect the particular circumstances of the case to arrive at a number that is reasonable and fair. "The ultimate goal is to approve a reasonable attorney's fee that is not excessive." <u>Litton Indus. Inc., Inc. v. IMO Indus. Inc.</u>, 200 N.J. 372, 388 (2009).

In assessing an award, it is well-established that trial courts must carefully evaluate the fee's overall reasonableness. To that end, "[t]he court's first step . . . is determining the lodestar, 'which equals the number of hours reasonably expended multiplied by a reasonable hourly rate.'" <u>Jacobs v. Mark Lindsay & Son Plumbing & Heating, Inc.</u>, 458 N.J. Super. 194, 209 (App. Div. 2019) (quoting <u>Furst v. Einstein Moomjy, Inc.</u>, 182 N.J. 1, 21 (2004)).

> There are four considerations in setting the lodestar. The first is the reasonableness of the attorney's fee, evaluated under the factors set forth in RPC 1.5(a). Second, the court considers the reasonableness of the time billed by the attorney, since a party is not entitled to [attorney's] fees for excessive and unnecessary hours. Third, the court determines whether the award should be decreased because the plaintiff "achieved

10

limited success in relation to the relief he [or she] had sought." Fourth, the court must decide whether the attorney is entitled to a fee enhancement if the attorney worked under a contingency agreement.

[Heyert v. Taddese, 431 N.J. Super. 388, 443-44 (App. Div. 2013) (footnote omitted) (citations omitted) (first citing Furst, 182 N.J. at 21-22; then quoting Furst, 182 N.J. at 23)].

In considering the reasonableness of the proposed attorney's fees, "the court evaluates the 'rate of the prevailing attorney in comparison to rates "for similar services by lawyers of reasonably comparable skill, experience, and reputation" in the community.'" Jacobs, 458 N.J. Super. at 210 (quoting Furst, 182 N.J. at 22).

As for the reasonableness of the time billed, the trial court must consider "whether the time expended in pursuit of the 'interests to be vindicated,' the 'underlying statutory objectives,' and recoverable damages is equivalent to the time 'competent counsel reasonably would have expended to achieve a comparable result.'" Ibid. (quoting Furst, 182 N.J. at 22). If after the court establishes the lodestar fee, the court determines that an enhancement is warranted, "'the court should consider the result achieved, the risks involved, and the relative likelihood of success in the undertaking' to determine the amount of [the] enhancement." Id. at 210 (quoting Furst, 82 N.J. at 23).

11

Similarly, "[t]he court must not include excessive and unnecessary hours spent on the case in calculating the lodestar." Furst, 182 N.J. at 22. Therefore, the amount of the lodestar "may be reduced[.]" R.M. v. Sup. Ct. of N.J., 190 N.J. 1, 11 (2007).

We conclude that on remand, the trial court did not sufficiently engage in this analysis. We are constrained, therefore, to remand the matter for a detailed consideration of the attorney's fee award with a specific mandate the trial court only consider those charges with a reasonable nexus to defendants' efforts to obtain the $200,000 judgment after plaintiffs' default. We express no view as to the reasonableness of any of those time entries and leave that to the trial court on remand.

To the extent we have not addressed any of plaintiffs' remaining arguments, we conclude those arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded for the trial court to address the attorney's fees award in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2100-24